Clerk, U.S. District Court
Southern District of Texas
FILED

OCT 23 2013

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### Corpus Christi Division

**Fidencio Alberto Estrada-Guerra,**

Petitioner,

vs

**United States of America,**

Respondents

_____/

Crim. No. 2-05-00438-1

Civil No. 2:13cv332

## MOTION PURSUANT TO TITLE 28 USC 2255 ¶6 (3) TO VACATE, SET ASIDE, OR CORRECT SENTENCE

**COMES NOW**, Fidencio Alberto Estrada-Guerra, hereinafter known as petitioner, in pro se forma, respectfully prays this Honorable Court grants the relief seek herein under Title 28 USC 2255 (6) (3). The Supreme Court has established that the one (1)-year limitation period under ¶6 (3) begins to run on the date on which the Supreme Court "initially recognized" the right asserted in an applicant's motion. See, *Dodd v. United States*, 545 U.S. 353 (2005). In support thereof petitioner avers as follows:

1- Petitioner was charged with one count of conspiracy to possess with intent to distribute more than five kilograms of cocaine; and more than one thousand (1000) kilograms of marijuana in violation of Title 21 USC 846, 841 (a) (1) and 841 (b) (1) (A). Also, count two charged with laundering of monetary instruments in violation of 18 USC 1956 (h).

1

2- Petitioner pled guilty to counts, one and two, of the instant indictment. The district court accepted the presentence report recommendations to increase petitioner's minimum mandatory. The probation officer offense level computations were: 1) Base offense level of thirty-six (36) (the offense involved the distribution of cocaine and money laundering which resulted in 24, 276 kilograms of marijuana pursuant to USSG 2D1.1. (c); 2) Pursuant to USSG 2S1.1 (b) (2) (B), convicted under 18 USC 1956, offense is increased by two (2) points; and 3) Pursuant to USSG 3B1.1 (a) increased by four (4) points (for being a leader and organizer of the criminal activity).

3- After the enhancements the adjusted offense level was **42**. Three points were reduced for acceptance of responsibility pursuant to USSG 3E1.1 (a) and (b).

4- The total offense level was **39** with a criminal history of category II for a guideline range of 292 to 365 months of imprisonment. The district court sentence petitioner to serve two-hundred ninety-two (292) months of incarceration as to count one; and **(240)** months on counts two (both counts concurrent which each other).

5- It is well settled that pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read "to raise the strongest arguments that they suggest." This Court recognizes that pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); see also, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding that the allegations in a pro se complaint are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers.")

6-Pursuant to 28 USC 2255 6 (3) petitioner avers his sentence and conviction is subject to attack based on the premise it was imposed: 1) in violation of the Constitution or laws of the United States; 2) the court was without jurisdiction to imposed such sentence; 3) petitioner's sentence was in excess of the maximum authorized by law; and 4) petitioner's sentence is subject to

collateral attack.

7- In the beginning of the 21st Century the Supreme Court determined the Constitution requires that a fact (other than the fact of a prior conviction) that increases the range of punishment must be charged in an indictment and found by a jury beyond a reasonable doubt. Pet. Br. 11 (citing *Apprendi*, 530 U.S. at 490).

8- Later, Justice Thomas, writing for four justices, recognized that the logic of *Apprendi* applied "[w]hether one raises the floor or raises the ceiling" of sentencing ranges, because "it is impossible to dispute that the defendant is exposed to greater punishment than is otherwise prescribed." *Harris*, 536 U.S. at 579 (Thomas, J., dissenting).

9- Recently, the Supreme Court overruled *Harris*, and acknowledged that under *Apprendi* it "ha[d] treated sentencing factors, like elements, as facts that have to be tried to the jury and proved beyond a reasonable doubt." *Alleyne v. US*, ___ U.S. ___, 133 S. Ct. 2151 (2013).

10- In *Alleyne* the justices applied *Apprendi* to increases in mandatory minimum sentences and held that "because a mandatory minimum sentence increases the penalty for a crime, any fact that increases the mandatory minimum sentence is an "element" of the crime that must be submitted to the jury." *Id*.

11- Pristinely clear, *Apprendi* jury-trial rights now apply to increases in both mandatory maximum sentences and mandatory minimum sentences. *Alleyne* emphasized that a fact increasing either end of the sentencing range (the minimum or the maximum) produces a new penalty, constitutes an element of the offense, and must be found by the jury, regardless of what sentence the defendant might have received had a different range been applicable. ___ U.S. at ___, 133 S. Ct. at 2162.

12- Petitioner avers that during the sentencing hearing counsel addressed the court and agreed

and/or accepted as true that he explained the benefits of accepting the plea agreement. Counsel mention that he would contest the four points added for a leadership role during the sentencing phase. Also, counsel expressed to the court that petitioner was 'looking at 15 years' of incarceration and possible less than 10 if petitioner cooperated with the prosecution'. (See, Sentencing Transcripts at page 23)

13- During the sentencing phase the court addressed how the conversion of cocaine and the money laundered yielded a total guideline offense of 36. The probation officer (Victor Valdes) recommended that based on the information from prosecutions witnesses the amounts of marijuana and cocaine yielded 400 kilograms of marijuana. The money laundered was converted to 3,876 kilograms of marijuana and another 1,000 kilograms that was successfully transported were added. The total sum was 24, 276 kilograms of marijuana which yielded a total offense level of 36. (See, Sentencing Transcripts at page 29)

14-Petitioner avers that the aforementioned enhancements: 1) drug quantity converted into marijuana;2) money laundered converted into marijuana; 3) leadership role in the offense; and 4) the two points pursuant to 2S1.1 (b) (2) (B) were not submitted to a jury to prove beyond a reasonable doubt. In the end, after applying the enhancements petitioner guideline range (with a criminal history of category II) yielded an offense level of 42.

15- Accordingly, under the sentencing guideline table petitioner guideline range after the applying the enhancement was from 292 to 360 months of imprisonment. Applying the *Alleyne* decision should determine that any increase on the sentencing guideline range outside from the *Apprendi/Alleyne* safeguards should be corrected by the district court.

16- Under the *Apprendi/Booker* Sixth Amendment line of cases, because the finding that petitioner 'upward departure from the recommended guideline range was justified" produced an

4

increased penalty for petitioner, it constitutes an element of the offense, which must be found by the jury beyond a reasonable doubt, regardless of what sentence petitioner might have received had a different range been applicable.

17- Moreover, long ago, Justice Sotomayor (as part of panel from the Second Circuit) established that: "prosecutors must draft indictments and develop evidence to meet their burden of proof; defendants and their counsel, who must decide whether to challenge the sufficiency of the government's case or pursue plea negotiations; and trial judges, who must rule on the relevancy and sufficiency of evidence, prepare jury instructions, and ensure the factual bases for guilty pleas, all need to know long before sentencing which facts must be proved to a jury and which ones can be reserved for resolution by the sentencing judge." See, *United States v. Gonzalez*, 420 F.3d 111, 125 (2d Cir. 2005).

18- Specifically, there are numerous cases where juries are presented with the option of convicting a defendant of one offense carrying a particular mandatory minimum as compared to a lesser-included offense lacking a mandatory minimum sentence (or having a lower mandatory minimum). In these cases, the determination of whether the higher mandatory minimum applies turns on whether the jury finds a particular offense fact beyond a reasonable doubt.

19- As the Supreme Court recognized in *Apprendi*, the Constitution's "procedural safeguards designed to protect [a defendant] from unwarranted pains should apply equally to [all] acts that a state has criminalized. 530 U.S. at 476.

20- The Court explained that the procedural rights set out in the Fifth and Sixth Amendments are "constitutional protections of surpassing importance," *id.*, because requiring the government to prove its criminal accusations to an impartial jury beyond a reasonable doubt serves to "guard against a spirit of oppression and tyranny on the part of rulers, and as the great bulwark of our

civil and political liberties," *id.* at 477 (Quoting 2 Joseph Story, Commentaries on the Const. of The United States 540-41 (4th ed. 1873)).

21- As further explained in *Blakely v. Washington*, 542 U.S. 296 (2004), these procedural rights not only "function as circuit breaker in the State's machinery of justice," but also serve as a "fundamental reservation of power in our constitutional structure" committed to democratic self-governance. *Id.* at 306. Consequently, under the Constitution "the judge's authority to sentence derives wholly from the jury's verdict." *Id.*

22- These principles are fundamental and should be interpreted and applied in light of the precise Constitutional texts concerning jury trial rights and related criminal procedures. The jury trial right appears twice in the U.S. Constitution. Section 2 of Article III provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury." And the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."

23- Further, the Fifth Amendment, in addition to its broad due process command, sets out the grand jury requirement that must be met before persons can be "held to answer for a capital or otherwise infamous crime" and precludes persons from being twice put in jeopardy for "the same offense."

24- In addition to highlighting the favored status of the jury rights and bedrock procedural limits on state police power, the language of these provisions should be read together to help chart the proper boundaries of the procedural rights at issue in the instant case.

25- By framing the jury trial right in terms of "crimes," which are the basis for a "prosecution" of "the accused," and by using the terms "crime" and "offense" in Article III and the Fifth Amendment, the constitutional text connotes that the criminal procedure rights in the Fifth and

Sixth Amendments attach to any and all offense conduct for which the state seeks to impose a specific form of criminal punishment. *See United States v. White*, 551 F.3d 381, 390 (6th Cir. 2008) (Merritt, J., dissenting) ("By attaching the jury-trial right to *crimes*, rather than to any and all decisions related to the *accused*, the constitutional text suggests a basis for the distinction between offense conduct and offender characteristics."); *cf. Apprendi*, 530 U.S. at 500 (Thomas, J., concurring) (because "[a]ll of these constitutional protections determining which facts constitute the 'crime,'" "in order for a jury trial of a crime to be proper, all elements of the crime must be proved to the jury (and … proved beyond a reasonable doubt)").

26- All specific and defined facts relating to offense conduct which the law makes the basis for depriving a person of any "life, liberty, or property" are subject to the jury trial right and related constitutional protections.

27- The jury trial right therefore can and should be understood to concern any and all offense conduct set forth in criminal statutes because the state, through its legislative and executive branches, defines "crimes" and accuses and prosecutes crimes based on what persons do. Not for conduct outside the limits the constitution requires.

28- When the law ties mandatory consequences to any specific "offense" conduct—such as the amount of money or drugs involved in an offense, or whether and how the defendant used a weapon, or whether the offense caused bodily harm to a victim—the state has legally defined the specific conduct it believes merits criminal sanction. The jury trial right, in turn, guarantees that a defendant can demand that the state prove to a jury that the defendant did in fact commit the specific offense conduct the state seeks to punish.

29- Notwithstanding the importance of the jury, the modern criminal justice system still requires the efforts of sentencing judges to both appropriately tailor individual sentences…" See,

*Cunningham*, 549 U.S. at 296 (Kennedy, J., dissenting); see also, Oregon *v. Ice*, 555 U.S. 160, 169 (2009) (a sentencing judge's fact-finding actions are constitutionally permissible so long as "[t]here is no encroachment ... by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the State and the accused.")

30- Therefore, so long as a judge does not find offense-specific facts or facts that would otherwise alter the range of sentences to which a defendant would otherwise be exposed, judicial factfinding of offender-specific facts brings distinct benefits into the modern criminal justice system.

31- Jury trials and sentencing serve distinctly different functions. As the Court has long understood, trials are backward-looking adjudications properly focused on requiring the government to establish all of the facts on which the state bases its demand for criminal punishment. *See Williams*, 337 U.S. at 246-47.

32- Unlike sentencing factors, which "traditionally involve characteristics of the offender... [c]haracteristics of the offense itself are traditionally treated as elements," which "lie 'closest to the heart of the crime at issue.'" *United States v. O'Brien*, 130 S. Ct. 2169, 2176 (2010) (quoting *Castillo v. United States*, 530 U.S. 120, 126 (2000)).

33- Juries are also better suited to find offense-related facts because they benefit from the limitations on admissible evidence, which ensure that adverse offender-related facts do not influence their factual determinations. Of course, offender-related facts are critical for a judge to set a fair sentence, but they are legally irrelevant to determining the facts of an offense and can sometimes prove to be unduly prejudicial in that context. *Cf. Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) ("For the determination of sentences, justice generally requires consideration *of more than the particular acts by which the crime was committed* and that there be taken into

account the circumstances of the offense together with the character and propensities of the offender." (Emphasis added) (Quoting *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937)).

34- Likewise, *Alleyne* (an extension of *Apprendi*) applies with equal force to facts increasing the mandatory minimum, for a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed. *Id.*, at 490. Because the legally prescribed range *is* the penalty affixed to the crime, it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense.

35- Secondly, *Alleyne* established that "dissociate the floor of a sentencing range from the penalty affixed to the crime. The fact that criminal statutes have long specified both the floor and ceiling of sentence ranges is evidence that both define the legally prescribed penalty. It is also impossible to dispute that the facts increasing the legally prescribed floor aggravate the punishment, heightening the loss of liberty associated with the crime." *Id Slip Opinion.*

36- Third, it held that, "defining facts that increase a mandatory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment, see *id.*, at 478–479, and preserves the jury's historic role as an intermediary between the State and criminal defendants; see *US v. Gaudin*, 515 U. S. 506, 510–511." *Id.*

37- The court concluded that, "The essential Sixth Amendment inquiry is whether a fact is an element of the crime. Because the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury, regardless of what sentence the defendant might have received had a different range been applicable. There is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum." *Id.*

38- Supreme Court precedents also established that there exists a right to counsel during sentencing in both, capital and noncapital, cases. *Mempa* v. *Rhay*, 389 U. S. 128 (1967): see also, *Wiggins* v. *Smith*, 539 U. S. 510, 538 (2003). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because "any amount of [additional] jail time has Sixth Amendment significance." *Glover*, *supra*.

39- The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties. However, criminal defendants require effective counsel during plea negotiations. "Anything less . . . might deny a defendant 'effective representation by counsel at the only stage when legal aid and advice would help him.'" See, *Massiah*, 377 US at 204 (quoting *Spano* v. *New York*, 360 US 315 (1959) (Douglas, J., concurring)).

40- Accordingly, petitioner's sentence and conviction carries the stigma of punishment outside the limits of both, acceptance by petitioner and/or without the jury safeguards of beyond a reasonable doubt. The sentence and conviction as imposed in the instant case is now 'debatable among jurists of reason', also subject to review after *Alleyne*.

41- In conclusion, the sentence should be vacated, set aside and corrected to eliminate the unconstitutional punishment it carries. The sentencing range (as recommended by the probation officer) which yielded an offense level of **39** for a total incarceration of 292 months is subject to collateral attack after *Alleyne*. This increased the penalty to which petitioner was subjected is outside the jury constrains and violated his Sixth amendment rights.

**WHEREFORE**, for the foregoing reasons and the case law cited above, petitioner prays this Honorable Court grants the relief seek herein Under Title 28 USC 2255 (6) (3). Also, grants

and evidentiary hearing in order to determine if counsel rendered ineffective assistance in the instant case and/or grants any other relief this Court's deems proper.

Filed on the 10th day of September 2013.

Respectfully submitted,

*Fidencio A. Estrada Guerra*

Fidencio Alberto Estrada-Guerra
Petitioner Pro Se
Register No. 52341-179

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* under penalty of perjury that the following motion under Title 28 USC § 2255 (6) (3) to vacate set aside and correct a sentence is true and correct. Also, a copy of the foregoing was mailed first class pre-paid to the Assistant US Attorney's Office located at 800 N. Shoreline, Suite 500 Corpus Christi, Texas 78401.

*Fidencio A. Estrada Guerra*

Fidencio Alberto Estrada-Guerra
Petitioner Pro Se

Fidencio A. Estrada Guerra
Reg. No: 52341-179
Fort Worth - FCI
P.O. Box 15330
Fort Worth, TX 76119



Clerk of the Court
US District Court - Corpus Chr
United States Courthouse
1133 N. Shoreline Boule
Corpus Christi, TX

Clerk, U.S. District Court
Southern District of Texas
FILED
OCT 23 2013
David J. Bradley, Clerk of Court